CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 30 2015

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LISA R. PERDUE | ) |
| Plaintiff, | ) Civil Action No. 7:14CV00173 |
| v. | ) **MEMORANDUM OPINION** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) By: Hon. Glen E. Conrad<br>Chief United States District Judge |
| Defendant. | ) |

The plaintiff, Lisa R. Perdue, has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's entitlement to disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq. Jurisdiction of this court is established pursuant to 42 U.S.C. § 405(g) and § 42 U.S.C. § 1383(c)(3).

By order entered June 26, 2014, the court referred this case to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge submitted a report on August 12, 2015, in which he recommends that the Commissioner's final decision denying plaintiff's entitlement to social security benefits be affirmed. Plaintiff has filed objections to the magistrate judge's report.

Ms. Perdue was born on July 22, 1969, and eventually completed her high school education. Plaintiff has also participated in a college computer course and paralegal program, though she did not complete either course of study. Ms. Perdue has been employed as a cashier, customer service representative, insurance agent, production worker, and child care worker. On November 10, 2009, plaintiff filed an application for a period of disability and disability

insurance benefits. Several months later, she filed an application for supplemental security income benefits. Ms. Perdue alleges that she became disabled for all forms of substantial gainful employment on January 1, 2007, due to endometriosis; depression; anxiety; back pain; hepatitis C; chronic sinusitis and allergies; neck pain; carpal tunnel syndrome in both wrists; pain in hips and legs; fatigue; and decreased immune system. Plaintiff now maintains that she has remained disabled to the present time. As to her application for disability insurance benefits, the record reveals that Ms. Perdue met the insured status requirements of the Act through the fourth quarter of 2011, but not thereafter. See generally, 42 U.S.C. §§ 416(i) and 423(a). Consequently, plaintiff is entitled to disability insurance benefits only if she has established that she became disabled for all forms of substantial gainful employment on or before December 31, 2011. See generally, 42 U.S.C. § 423(a).

Ms. Perdue's claims for benefits were denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated January 16, 2013, the Law Judge also determined that plaintiff is not disabled. The Law Judge found that Ms. Perdue suffers from several severe impairments, including obesity; hepatitis C by history; diabetes mellitus with peripheral neuropathy; polyarthralgias; bilateral carpal tunnel syndrome; lumbar strain with degenerative disc disease; personality disorder; depression; anxiety/panic disorder; and a pain disorder. (TR 15). Because of these severe impairments, the Law Judge ruled that Ms. Perdue is disabled for all of her past relevant work activities. (TR 23). However, the Law Judge held that plaintiff retains sufficient functional capacity to perform a limited range of light work activity. The Law Judge assessed Ms. Perdue's residual functional capacity as follows:

2

> After careful consideration of the entire record, this Administrative Law Judge finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) as follows: lift, carry, push and/pull 10 pounds frequently and 20 pounds occasionally; sit, stand and/or walk for 6 hours each in an 8 hour workday; (nonexertional) occasional balancing, stooping, kneeling, crouching, crawling and climbing of ramps and stairs; frequent handling, feeling, fingering and reaching overhead; avoid concentrated exposure to temperature extremes, excess humidity, pollutants and irritants in work that does not require exposure to hazardous machinery, unprotected heights, vibrating surfaces or climbing ladders, ropes or scaffolds. The claimant's moderate difficulty in social functioning and concentration, persistence and pace further limits her nonexertionally to the understanding, remembering and carrying out simple instructions in repetitive, unskilled tasks with only occasional interaction with the public.

(TR 21). Given such a residual functional capacity, and after considering plaintiff's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge determined that Ms. Perdue retains sufficient physical, mental, and emotional capacity to perform several specific light work roles existing in significant number in the national economy. Accordingly, the Law Judge ultimately concluded that plaintiff is not disabled, and that she is not entitled to a benefits under either federal program. See 20 C.F.R. §§ 404.1520(g) and 416.920(g).

The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Ms. Perdue has now appealed to this court.

As previously noted, on June 26, 2014, the court referred this case to a magistrate judge for a report setting forth findings of fact, conclusions of law, and a recommended disposition. The magistrate judge filed a report on August 12, 2015. The magistrate judge recommended that the court affirm the final decision of the Commissioner denying plaintiff's eligibility for a period

3

of disability, disability insurance benefits, and supplemental security income benefits. Based on the arguments advanced by plaintiff's attorney, the magistrate judge determined that the issues in the case include whether the Administrative Law Judge properly considered plaintiff's nonexertional limitations, and whether the Law Judge properly evaluated a report from a consultative psychologist. The magistrate judge also addressed plaintiff's argument that the Law Judge had failed to properly evaluate her testimony and credibility. The magistrate judge ultimately concluded that the Administrative Law Judge's findings as to the extent of plaintiff's nonexertional limitations are supported by the evidence, and that the Administrative Law Judge properly utilized the consultative psychological report in propounding hypothetical questions to the vocational expert. The magistrate judge also found that the Law Judge's evaluation of plaintiff's testimony, and her credibility, is supported by substantial evidence. The magistrate judge determined that the Law Judge properly relied on the vocational expert's testimony in finding residual functional capacity for specific light work roles existing in significant number in the national economy.

In objecting to the magistrate judge's recommendation, plaintiff has again focused on her nonexertional limitations.[1] Ms. Perdue argues that the Law Judge failed to make findings as to the consultative psychologist's observation that work reliability "may be an issue for the claimant." (TR 485). Citing the recent decision of the United States Court of Appeals for the Fourth Circuit in Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015), plaintiff also contends that the Law Judge's questioning of the vocational expert did not properly account for her

---

[1] It is essentially undisputed that Ms. Perdue experiences physical problems which prevent performance of anything more than lighter work activities. The critical issue in the case is whether plaintiff's mental and emotional problems render her incapable of performing the lighter work roles for which she is otherwise physically capable.

4

deficiencies in concentration, persistence, and pace, or for her restrictions regarding regular contact with co-workers. Finally, Ms. Perdue maintains that the Law Judge failed to properly credit her testimony concerning the functional impact caused by her physical problems and emotional dysfunction. Ms. Perdue asserts that this case should be remanded to the Commissioner so that a more comprehensive hypothetical question, with explicit findings as to work-related limitations, can be put to a qualified vocational expert.

The court reviews, de novo, the magistrate judge's report and recommendation. See 28 U.S.C. § 636(b)(1). The court's review of the Commissioner's final decision is limited to a determination as to whether there is "substantial evidence" to support the Commissioner's conclusion that plaintiff is not entitled to disability insurance benefits or supplemental security income benefits. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 400 (1971).

After a review of the record in this case, the court is unable to conclude that the Commissioner's final decision is supported by substantial evidence. In assessing Ms. Perdue's physical and emotional problems, the Administrative Law Judge gave "great weight" to consultative reports completed by Dr. William Humphries, a medical doctor, and Dr. Jeffrey Luckett, a psychologist. (TR 23). The court believes that the Law Judge's finding of "residual functional capacity for light work" is fully consistent with Dr. Humphries' assessment. (TR 21). After the initial administrative hearing, the Law Judge decided to refer plaintiff to Dr. Luckett for

5

a psychological evaluation. Dr. Luckett submitted a report on July 9, 2012. Based on his review of plaintiff's medical history, and his own clinical findings, Dr. Luckett diagnosed chronic pain disorder associated with both psychological factors and a general medical condition; panic disorder with mild agoraphobia; generalized anxiety disorder; and moderate depressive disorder. (TR 84). The psychologist offered an overall assessment as follows:

> In regards to employment, from a strictly psychological standpoint, the claimant would be able to work an 8-hour day and 40-hour week. She would be able to perform simple and repetitive tasks as well as some tasks of more difficulty and complexity. She would be able to work with the general public, peers, and supervisors appropriately and would not require specialized supervision. Reliability may be an issue for the claimant. She tends to orbit around her physical and psychological difficulties, and therefore punctuality and perseverance may be an issue in regards to her employment.

(TR 484-85). The Administrative Law Judge interpreted Dr. Luckett's report so as to reflect moderate difficulties with regard to plaintiff's concentration, persistence, and pace. (TR 20).

At the supplemental administrative hearing, the Law Judge posed a series of hypothetical questions for the vocational expert,[2] which consisted of variations of a basic question:

> Assume an individual such as the claimant, who is able to lift 20 pounds occasionally, 10 pounds frequently; stand and walk no more than six hours in an eight-hour day, sit for no more than six hours in an eight-hour day. Pushing and pulling is limited in the lower extremities to lift and carry amount. Occasional climbing ramps and stairs, balancing, kneeling, crawling, stooping, and crouching. Frequent handling, feeling, and fingering, and reaching overhead in work that avoids concentrated exposure to extreme temperatures, excess humidity, pollutants, and irritants; does not require exposure to hazardous machinery, unprotected heights, climbing ladders, ropes, scaffolds, or working on vibrating surfaces. But the work must be simple, repetitive, and unskilled, involving only occasional interactions with the general public.

---

[2] The same vocational expert had appeared and testified at the first administrative hearing. At the second hearing, the Law Judge made reference to the vocational expert's responses to four hypothetical questions at the first hearing which dealt primarily with plaintiff's physical limitations.

6

>   Now, Dr. Luckett has also indicated -- has indicated rather that reliability may be an issue and that punctuality and perseverance may be an issue. Now, in terms of the vocational relevancy of those comments, let's just assume at the outside that he would mean that she would have limitations in those areas that would cause her to be absent more than two days a month or tardy.
>
>   Would such a person be able to perform the claimant's past work as she actually performed it or as it is customarily performed in the national economy?

(TR 79-80). In response, the vocational expert indicated that Ms. Perdue would not be able to work because of "an unacceptable rate of absenteeism." (TR 80). When asked to consider the same hypothetical question, but with the issues with perseverance and punctuality taken to mean absences of no more than one day a month, the vocational expert opined that plaintiff could be expected to engage in light work activity as an assembler or laundry folder. (TR 81). Thus, at least in terms of her questioning of the vocational expert, it is clear that the Law Judge interpreted the deficiencies in perseverance and punctuality as identified by Dr. Luckett only to relate to the issue of absenteeism. The Law Judge relied on testimony from the vocational expert in determining that Ms. Perdue could be expected to perform alternate work roles existing in significant number in the national economy.

In the court's view, the primary difficulty in this case is that the hypothetical question put to the vocational expert simply did not include all the nonexertional limitations found to exist by the Administrative Law Judge, based on her reading of Dr. Luckett's consultative psychological report. The Law Judge specifically found that Ms. Perdue experiences a moderate impairment with regard to concentration, persistence, and pace. (TR 20, 21). Yet, in assessing the work-related limitations associated with plaintiff's nonexertional impairments for the vocational

7

expert, the Law Judge mentioned only a limitation for anything other than simple, repetitive, and unskilled work activity, with work absences of no more than one a month.

In <u>Walker v. Bowen</u>, 889 F.2d 47, 50 (4th Cir. 1989), the United States Court of Appeals for the Fourth Circuit commented as follows:

> The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform. In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments. (citations omitted).

In the instant case, the court is simply unable to conclude that the assessment offered by the vocational expert, which was adopted by the Administrative Law Judge, was based on all of the work-related limitations which the Law Judge found to exist. The Administrative Law Judge ultimately determined that plaintiff is capable performing a wide range of lighter work activities which involve no more than simple, repetitive, and unskilled tasks, without regard for the level of concentration, persistence, and pace required in those work roles. However, while Dr. Luckett did opine that plaintiff would be able to perform simple and repetitive tasks, as well as some work of more complexity, he went on to observe that her capacity for work would also be affected by deficiencies in "punctuality and perseverance." (TR 485). Stated differently, Dr. Luckett did not suggest that plaintiff's performance of simple and repetitive tasks would not be impacted by her problems with punctuality and perseverance. Indeed, as a matter of common sense, it would seem that repetitive work activity would be greatly affected by problems with perseverance. In any event, these are questions for the vocational expert, and not for the court or the Administrative Law Judge. In the court's opinion, the Law Judge's failure to ask the

8

vocational expert to consider work-related factors, which the Law Judge specifically found to exist, renders the vocational expert's opinion meaningless. Walker, supra.

As noted by the United States Court of Appeals for the Tenth Circuit in Wiederholt v. Barnhart, 121 F. App'x 833, 839 (10th Cir. 2005):

> The relatively broad, unspecified nature of the description "simple" and "unskilled" does not adequately incorporate the ALJ's additional, more specific findings regarding Mrs. Wiederholt's mental impairments. Because the ALJ omitted, without explanation, impairments that he found to exist, such as moderate difficulties maintaining concentration, persistence, or pace, the resulting hypothetical question was flawed. Moreover, there is no evidence to suggest that the VE heard testimony or other evidence allowing her to make an individualized assessment that incorporated the ALJ's specific additional findings about Mrs. Wiederholt's mental impairments. (citations omitted).

See also Millhouse v. Astrue, 2009 WL 763740, at *3 (M.D. Fla. March 23, 2009) (stating that "moderate limitations in social functioning and concentration, persistence, or pace constitute greater restrictions than a limitation to unskilled work"); Chavanu v. Astrue, 2012 WL 4336205, at *9 (M.D. Fla. September 21, 2012) ( noting that "[s]everal circuits have found that restricting [a] VE's inquiry to simple, routine, or repetitive tasks, or unskilled work does not accounts [sic] for a plaintiff's moderate deficiencies in concentration, persistence, or pace," and citing to these cases); and Sexton v. Colvin, 21 F.Supp.2d 639, 642-3 (W.D.Va. May 19, 2014) (a limitation to simple, unskilled work does not necessarily imply, or take into account, moderate limitations in concentration, persistence, or pace).

In Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015) the United States Court of Appeals for the Fourth Circuit recently reached a similar conclusion:

> In addition, we agree with other circuits that an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine, tasks or unskilled work.' Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third,

9

Seventh, and Eighth Circuits). As Mascio points out, the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace.

Id. at 638.

Both the Commissioner and the magistrate judge attempt to distinguish Mascio. Citing Winschel v. Comm'r of Soc. Sec., 631 F.3d at 1180, the magistrate judge points out that an Administrative Law Judge may account for limitations in concentration, persistence, and pace in determining that claimant can perform only simple, routine, or unskilled work.[3] Based on the medical record developed in a particular claimant's case, it is certainly possible that the claimant may be capable of performing simple, routine, or unskilled work despite moderate impairments in concentration, persistence, and pace. The simple fact is that no two claimants are the same, and a particular claimant's capacity for alternate work activity may turn, in part, on factors such as physical condition, age, education, and prior work experience. However, when the Law Judge believes that a particular claimant's impairments in concentration, persistence, and pace do not affect the claimant's capacity for simple, routine, or unskilled work, it seems only reasonable that the Law Judge should explain this finding, in relation to the medical record. The court finds no basis upon which to conclude that the Administrative Law Judge addressed such deficiencies in assessing Ms. Perdue's residual functional capacity. Once again, in the instant case, Dr. Luckett

---

[3] The magistrate judge suggests that the Law Judge in the instant case accounted for moderate limitations in concentration, persistence, and pace in her determination as to whether Ms. Perdue suffers from a listed impairment under step three of the sequential disability analysis set forth under 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). However, after reviewing the Law Judge's assessment of plaintiff's case under step three, the court is unable to identify any explanation as to why the Law Judge felt that plaintiff's moderate limitations in concentration, persistence, and pace are subsumed under a finding of residual functional capacity for simple, routine, or unskilled work. In any event, the assessment of plaintiff's residual functional capacity occurs at step four of the sequential analysis. See 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). See also 20 C.F.R. §§ 404.1545 and 416.945. Once the Law Judge determined that plaintiff's residual functional capacity is limited by moderate difficulties in concentration, persistence, and pace, the court believes that the Law Judge should have included such limitations in the hypothetical question to the expert so as to determine the vocational significance of such deficiencies. Walker, supra.

10

did not suggest that the plaintiff could perform a full range of simple and repetitive tasks without reference to her problems with punctuality and perseverance. In any event, the Administrative Law Judge ultimately found that Ms. Perdue experiences both moderate difficulties in social function and concentration, persistence, and pace which "further limits her nonexertionally to the understanding, remembering, and carrying out simple instructions and repetitive, unskilled tasks with only occasional interaction with the public." (TR 21). If plaintiff is further limited by deficiencies in concentration, persistence, and pace, those limitations should have been included in the hypothetical questions put to the vocational expert, so as to properly determine the work-related significance of such deficiencies.

Finally, the court believes that reliance on Winschel misses the point. In the last two paragraphs of its opinion in Winschel, the United States Court of Appeals for the Eleventh Circuit stated as follows:

> In this case, the ALJ determined at step two that Winschel's mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace. But the ALJ did not indicate that medical evidence suggested Winschel's ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical. Consequently, the ALJ should have explicitly included the limitation in his hypothetical question to the vocational expert.
>
> Because the ALJ asked the vocational expert a hypothetical question that failed to include or otherwise implicitly account for all of Winschel's impairments, the vocational expert's testimony is not "substantial evidence" and cannot support the ALJ's conclusion that Winschel could perform significant numbers of jobs in the national economy. Accordingly, we reverse. On remand, the ALJ must pose a hypothetical question to the vocational expert that specifically accounts for Winschel's moderate limitation in maintaining concentration, persistence, and pace.

11

631 F.3d at 1181. The court is simply unable to conclude that the opinion of the Law Judge in the instant case overcomes the deficiency identified by the Eleventh Circuit in Winschel. The Administrative Law Judge did not explain why she believed that Ms. Perdue's moderate impairments in concentration, persistence, and pace do not limit plaintiff's capacity to perform simple, unskilled, and repetitive tasks, nor did she make reference to any medical evidence or opinion which would support such a conclusion. Dr. Luckett's report, as well as common sense, suggest a contrary conclusion. In such circumstances, the court believes that it is impossible to determine whether the Commissioner's final decision in this regard is supported by substantial evidence. The court concludes that plaintiff's case must be remanded for further consideration consistent with this opinion.

Ms. Perdue also contends that the Administrative Law Judge failed to make a finding as to the number of days she could be expected to miss work because of her physical and emotional problems. Plaintiff also asserts that the Law Judge erred in assessing the credibility of her testimony given at the two administrative hearings. The court finds it unnecessary to consider these issues at this time. Inasmuch as the court has determined to remand the case for other reasons, plaintiff will be permitted to make these arguments to a fact finder at the time of a supplemental administrative hearing.

After a de novo review of the record, the court is constrained to conclude that plaintiff's objections to the magistrate judge's report must be sustained. The court concludes that there is "good cause" for remand of the case to the Commissioner for further consideration as outlined in this opinion. If the Commissioner is unable to decide this case in plaintiff's favor on the basis of the existing record, the Commissioner will conduct a supplemental administrative hearing, at

12

which both sides will be allowed to present additional evidence and argument. An appropriate judgment and order will be entered this day.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

DATED: This 30th day of September, 2015.

/s/ Glen Conrad
Chief United States District Judge